**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

DAVID RICARDO STEWART,     )
                             )
         Petitioner,    )
                             )
        v.           )      1:11CR156-2
                             )      1:14CV657
UNITED STATES OF AMERICA,   )
                             )
        Respondent.    )

## MEMORANDUM OPINION, ORDER, AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommended ruling on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion") (Docket Entry 103),[1] as well as on his letter motion requesting leave to assert additional collateral claims ("Motion to Amend") (Docket Entry 110). For the reasons that follow, the Court should deny the instant Motions.

_____

[1] Parenthetical citations refer to Petitioner's criminal case. The instant Section 2255 Motion consists of the standard form (cited herein by paragraph number where available and otherwise by the page number in the CM/ECF footer appended upon electronic docketing), as well as various attachments (cited herein by CM/ECF footer page number). The attachments include Petitioner's Presentence Report (Docket Entry 103 at 43-56), as to which he should have requested sealed filing, M.D.N.C. LCrR 32.3(a). The Clerk shall remedy Petitioner's oversight by removing from the publicly-available electronic and physical Docket the portion of the instant Section 2255 Motion encompassing the Presentence Report. The United States also attached to its Response a copy of Petitioner's Presentence Report, which it properly filed under seal. (Docket Entry 107-3.) The Clerk, however, shall unseal the Response itself (Docket Entry 107) and its other attachments (Docket Entries 107-1, 107-2, 107-4 - 107-7). See generally United States v. Reeves, 586 F.3d 20, 22 n.1 (D.C. Cir. 2009).

## I. BACKGROUND

The Court (per then-Chief United States District Judge James A. Beaty, Jr.) entered a Judgment sentencing Petitioner, inter alia, to consecutive prison terms of 276 and 84 months, after a jury found him guilty of attempted interference in commerce in violation of 18 U.S.C. § 1951(a) and using/carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Docket Entry 59; see also Docket Entry 1 (Indictment); Docket Entry 47 (Verdict); Docket Entry 79 (Sent'g Hrg. Tr.).) After the United States Court of Appeals for the Fourth Circuit affirmed, United States v. Barbee, 524 F. App'x 15 (4th Cir. 2013), Petitioner timely filed the instant Section 2255 Motion (Docket Entry 103). The United States responded (Docket Entry 107) and Petitioner replied (Docket Entry 109).[2] Petitioner thereafter filed the instant Motion to Amend. (Docket Entry 110.)[3]

_____

[2] Because Petitioner signed his Reply without taking an oath or acknowledging perjury penalties (see Docket Entry 109 at 2), he cannot rely on any factual assertions therein to support his claims. See, e.g., Wright v. United States, Nos. 3:10CV174, 3:04CR3, 2011 WL 4852470, at *17 n.7 (S.D. Ohio May 20, 2011) (unpublished) ("[T]he unsworn allegations of [the petitioner's] reply are not an acceptable form of evidence . . . ."), recommendation adopted, 2011 WL 4852495 (S.D. Ohio Oct. 13, 2011) (unpublished). Moreover, although the Reply states that a lawyer "filed [the instant Section] 2255 [Motion], [Petitioner] didn't file pro se" (Docket Entry 109 at 1), the record reflects that Petitioner (not an attorney) signed the instant Section 2255 Motion (under penalty of perjury) (see Docket Entry 103 at 13).

[3] Unlike the instant Section 2255 Motion, the instant Motion to Amend bears no indicia of an oath or acknowledgment of perjury (continued...)

2

## II.  SECTION 2255 MOTION

The instant Section 2255 Motion asserts these three claims:

A) "INEFFECTIVE ASSISTANCE OF COUNSEL" (Docket Entry 103, ¶ 12(Ground One));

B) "COUNSEL FAILED TO FILE A TIMELY MOTION TO CORRECT SENTENCE" (id., ¶ 12(Ground Two)); and

C) "IMPOSITION OF AN ILLEGAL SENTENCE" (id., ¶ 12(Ground Three)).

All three of the foregoing claims fail as a matter of law. Accordingly, the Court should deny the instant Section 2255 Motion.

### A.  Ground One

Ground One contends (1) Petitioner's Presentence Report ("PSR") improperly deemed his North Carolina breaking and entering conviction(s) from 2009 a predicate crime of violence under the career offender provision of the advisory Sentencing Guidelines and (2) his counsel should have prevented the Court from adopting that aspect of the PSR. (See id., ¶ 12(Ground One)(a).)[4] Specifically,

---

[3](...continued)
penalties. (Compare Docket Entry 103 at 13, with Docket Entry 110 at 2.) Any factual assertions in the instant Motion to Amend thus do not constitute evidence. See, e.g., Pizzuti v. United States, Nos. 10 Civ. 199, 1003, & 2585, 02 Cr. 1237, 2014 WL 4636521, at *24 n.17 (S.D.N.Y. Sept. 16, 2014) ("I decline to give any weight to unsworn statements that do not comply with 28 U.S.C. § 1746.").

[4] "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a
(continued...)

Ground One asserts that Petitioner's counsel failed to advise Petitioner that the PSR construed his 2009 breaking and entering conviction(s) as a crime of violence "because [he] was given a maximum sentence of between 11-14 months due to his Prior Record Level for Sentencing IV under the N.C. Structured Sentencing Act . . . ." (Docket Entry 103, ¶ 12(Ground One)(a).) According to Petitioner, if his counsel had so advised him, he "would have told his [counsel] that the Prior Record Level IV must have been entered in error because he was found on the Prior Level Worksheet as a Level III. This change would have reduced his sentence [for breaking and entering] from 11-14 max to a 10-12 max months and thus [it would] not [have qualified as a crime of violence for purposes of the career offender section of the Guidelines]." (Id.; see also id. ("If [Petitioner's c]ounsel had done his due diligence [sic] in this case, he would have reviewed the [PSR] prior to the hearing and found the 2009 conviction(s) and been able to correct the mistake . . . .").) This claim lacks merit.

---

[4](...continued)
controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a); see also U.S.S.G. § 4B1.2(a) (defining "crime of violence" for purposes of Section 4B1.1(a)). Without objection by Petitioner, the Court (per then-Chief Judge Beaty) adopted the material factual findings and guideline applications in Petitioner's PSR, including his designation as a career offender (which designation relied, for one of the two prior crime of violence predicates, on Petitioner's consolidated breaking and entering convictions in 2009). (See Docket Entry 79 at 21-23; Docket Entry 103 at 48, 51.)

Petitioner possessed a federal constitutional right to effective assistance of counsel in his criminal case in this Court. See U.S. Const. amend. VI; McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). To establish an ineffective assistance claim, Petitioner must show that his counsel's performance fell below a reasonable standard for defense attorneys and that prejudice resulted. See Strickland v. Washington, 466 U.S. 668, 687-94 (1984). "Surmounting Strickland's high bar is never an easy task. . . . [T]he standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted); see also United States v. Galloway, 749 F.3d 238, 241 (4th Cir. 2014) ("To meet th[e prejudice] element of an ineffective assistance claim, [the defendant] would have to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different and that the result of the proceeding was fundamentally unfair or unreliable." (internal quotation marks omitted)); Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel was not constitutionally ineffective in failing to object . . . [if] it would have been futile for counsel to have done so . . . .").

In this instance, Petitioner cannot clear Strickland's high bar because the certified state court judgment he submitted (Docket Entry 103 at 66-67) establishes that his 2009 North Carolina

breaking and entering conviction(s) carried a maximum imprisonment sentence of more than 12 months within the meaning of <u>United States v. Simmons</u>, 649 F.3d 237 (4th Cir. 2011) (en banc); more particularly, that judgment documents the status of breaking and entering as a Class H felony under North Carolina law and the status of Petitioner as a defendant with a "Prior Record Level" of IV, circumstances that exposed him to as much as 14 months in prison. See <u>United States v. Kerr</u>, 737 F.3d 33, 36-39 (4th Cir. 2013). Petitioner's counsel thus could not have mounted a successful challenge to the PSR's reliance on such conviction(s) to designate Petitioner as a career offender.

Nor does the record support a finding that the state court judgment erroneously listed Petitioner's Prior Record Level as IV, rather than III. To the contrary, as documented by the United States, although the Prior Record Level Worksheet for Petitioner's 2009 breaking and entering conviction(s) contains "a notation tending to indicate that [he qualified a]s Level III under structured sentencing – [it] also sets forth that [he] ha[d] nine prior record level points . . . . An offender with nine prior record level points during 2009 was designated Level IV under North Carolina structured sentencing." (Docket Entry 107 at 6-7; <u>see also</u> Docket Entry 103 at 58-59 (showing, on Prior Record Level Worksheet, that Petitioner received **<u>six</u>** points for a "Prior Felony Class B2 or C or D Conviction," **<u>two</u>** points for a "Prior Felony

6

Class H or I Conviction," and **one** point because "the offense was committed . . . while on supervised or unsupervised probation, parole, or post-release supervision; . . . serving a sentence of imprisonment; or . . . on escape," for a total of **nine** points, as well as that "9-14" points falls within Prior Record Level "IV"), 61-62 (setting forth Petitioner's admission, as part of breaking and entering plea, that he "was on parole when [the] offense [was] committed" and "that there are facts to support . . . sentencing points not related to prior convictions").)[5]

In sum:

> As the state court judge correctly found that [Petitioner] was Level IV for punishment purposes, [he] could have received more than one year for the 2009 Felony Breaking or Entering convictions and those convictions therefore properly qualify as "felonies" under *Simmons*. Because [Petitioner's] 2009 Felony Breaking or Entering convictions properly qualify as "felonies" under *Simmons*, [Petitioner's counsel] did not render ineffective assistance of counsel by failing to challenge them.

(Docket Entry 107 at 8.)[6]

---

[5] Petitioner's Reply appears to argue that the state court did not follow certain state law requirements in connection with accepting his guilty plea to (and/or sentencing him on) the breaking and entering offense(s). (See Docket Entry 109 at 1-2.) For reasons discussed above in Footnote 2, factual allegations in Petitioner's Reply carry no weight. Further, even if credited, such complaints about state court proceedings do not provide a sufficient basis for this Court to disregard a state conviction. See United States v. Jones, 977 F.2d 105, 106-11 (4th Cir. 1992).

[6] To the extent Ground One complains generally that Petitioner's counsel failed to adequately discuss the PSR with him, it falls short for want of any showing of prejudice; indeed,
(continued...)

<u>B. Ground Two</u>

Ground Two asserts that Petitioner's counsel "failed to timely file a motion to correct the sentence." (Docket Entry 103, ¶ 12(Ground Two) (capitalization omitted).) The entirety of the "[s]upporting facts" for that claim appears as follows:

> Counsel failed to file a Post Conviction Rule 35 Motion within 14 days to challenge the illegal sentence imposed. That had Counsel timely filed the motion, the Court would have further instructed the preparer of the [PSR] to correct it reflecting the actual Level and Point Score rather than the prejudical, incorrect report submitted. Therefore, [Petitioner] would not have received the 20 year enhancement.
>
> It should be noted that although the Court ordered the [PSR] to be corrected with regards to the unsubstantiated claims that [Petitioner] was a gang member, the [PSR] has not been amended to reflect that instruction to date.

(<u>Id.</u>, ¶ 12(Ground Two)(a).)

Nothing in this showing alleges (much less proves) that the Court, in fact, imposed an "illegal sentence" or adopted a "prejudical, incorrect" PSR, such that Petitioner's counsel could have sought relief under Federal Rule of Criminal Procedure 35(a).

---

[6](...continued)
Petitioner cannot show any prejudice on this front, in that the Court (per then-Chief Judge Beaty) recessed the sentencing hearing to allow Petitioner additional time to consult with his counsel and, upon the resumption of the hearing, Petitioner personally stated: "I just wanted to object to the PSR when it come [sic] to the gang-related thing. As far as the sentencing, we can go ahead and continue." (Docket Entry 79 at 16; <u>see also</u> <u>id.</u> at 14 ("I really don't have no problem with going through with sentencing. . . . Definitely not a problem with that.").) The Court thereafter upheld Petitioner's objection to the PSR's description of him as "a validated member of [a gang] . . . ." (<u>Id.</u> at 19-20.)

In other words, Ground Two "is vague, conclusory, speculative, and unsupported and fails for all these reasons." _Cabrera v. United States_, Nos. 1:09CR323-1, 1:12CV695, 2014 WL 6386902, at *9 (M.D.N.C. Nov. 14, 2014) (unpublished); _see also_ _United States v. Dyess_, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the [d]istrict [c]ourt." (internal quotation marks omitted)); _Cano v. United States_, Nos. 1:05CR354-4, 1:09CV321, 2009 WL 3526564, at *3 (M.D.N.C. Oct. 22, 2009) (unpublished) ("[The p]etitioner has provided only conclusory allegations which meet neither the error nor the prejudice prong of the _Strickland_ analysis."), _recommendation adopted_, slip op. (M.D.N.C. Dec. 29, 2009).[7]

---

[7] To the extent Ground Two relies on the allegations of Ground One (i.e., that Petitioner's breaking and entering conviction(s) did not constitute a felony under _Simmons_ as required to support his career offender designation), Ground Two fails as a matter of law for the same reasons (discussed above in Subsection II.A.) that Ground One does. To the extent Ground Two relies on the allegations of Ground Three (i.e., that the Court did not make sufficient findings or follow proper procedures in determining that Petitioner qualified as a career offender), Ground Two fails as a matter of law for the same reasons (discussed below in Subsection II.C.) that Ground Three does. To the extent Ground Two presents a claim related to the striking from Petitioner's PSR of any reference to gang membership, he has not alleged (much less shown) that his counsel or the Court failed to do anything that either one should have done and, indeed, Petitioner has offered nothing to support any claim on this subject, beyond the bald assertion that the PSR remains uncorrected, a showing that does not warrant even a hearing, let alone relief. _See, e.g._, _Nickerson v. Lee_, 971 F.2d 1125, 1136 (4th Cir. 1992), _abrogation on other grounds recognized_, _Yeatts v. Angelone_, 166 F.3d 255, 266 n.4 (4th Cir. 1999).

9

## C.  Ground Three

Ground Three seeks relief for "imposition of an illegal sentence." (Docket Entry 103, ¶ 12(Ground Three) (capitalization omitted).) As the "[s]upporting facts" for this claim, Petitioner identified these five items:

1) "[t]he Court failed to find as FACT that the Criminal History of [Petitioner] qualified him as a Career Offender" (id., ¶ 12(Ground Three)(a));

2) "the Court failed to validate any prior criminal or state convictions which the Court used in its determination, and accepted an Offense Level of 32 without inquiry as to the justification or the point score" (id.);

3) "[t]he Court does not 'determine' [Petitioner] is a Career Offender prior to sentencing" (id.);

4) the Court did not "accept[] on the record that the [PSR] Criminal History point score [w]as correct, nor d[id] it state whether [Petitioner] was convicted for both charges in Count #1 and Count #2" (id.; see also id. (noting that both counts of conviction included references to aiding and abetting liability under 18 U.S.C. § 2, but involved "different" substantive offenses)); and

5) "had the Court assigned an independent enitiy [sic] to review the [PSR] in order to quantify the point score assessed thereof, [Petitioner] would have recieved [sic] the proper sentence for his convictions" (id.).

10

As an initial matter, Petitioner's foregoing objections to the manner in which the Court arrived at an advisory sentencing range under the Guidelines do not state a cognizable collateral claim. "The language of § 2255 makes clear that not every alleged sentencing error can be corrected on collateral review. The Supreme Court has instructed that only those errors presenting a fundamental defect which inherently results in a complete miscarriage of justice are cognizable." <u>United States v. Foote</u>, 784 F.3d 931, 932 (4th Cir.) (internal quotation marks omitted), <u>cert. denied</u>, ___ U.S. ___, 135 S. Ct. 2850 (2015). Here, the Court (per then-Chief Judge Beaty) "sentenced [Petitioner] within the statutory limits, and while the career offender designation may have affected the ultimate sentence imposed, it did not affect the lawfulness of the sentence itself — then or now. Therefore, [the Court is] simply not presented with exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." <u>Id.</u> at 943 (internal brackets, citation, and quotation marks omitted); <u>see also</u> <u>id.</u> at 940 ("[W]e conclude Appellant's career offender designation was not a fundamental defect that inherently results in a complete miscarriage of justice."), 941 ("[T]o the extent Appellant argues that he is 'actually innocent' of being a career offender, the Supreme Court has yet to stretch [the] concept [of sentencing enhancement innocence] to non-capital sentencing, and we will not do so here.").

Alternatively, even if Ground Three presented a collaterally cognizable claim, it would fail as a matter of law because the five objections presented therein to Petitioner's sentence each lack merit; more specifically:

1) without objection, the Court expressly adopted the factual findings (except as to Petitioner's gang-affiliation) and the guideline applications in Petitioner's PSR, including his designation as a career offender (see Docket Entry 79 at 21-23), a course of action which controlling authority permits, see United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990) ("Without an affirmative showing the information is inaccurate, the court is free to adopt the findings of the presentence report without more specific inquiry or explanation. The burden is on the defendant to show the inaccuracy or unreliability of the presentence report." (internal brackets, citation, and quotation marks omitted));[8]

2) given its proper adoption of the PSR's material factual findings and guideline applications (see Docket Entry 79 at 21-23), the Court did not need (as Petitioner suggests) "to validate any [of his] prior criminal or state convictions" (Docket Entry 103, ¶ 12(Ground Three)(a)) or to make "inquiry as to the justification or the point score" (id.), see Terry, 916 F.2d at 162;

---

[8] To the extent Ground Three contends Petitioner did not qualify as a career offender based on considerations he articulated in connection with Ground One, that contention lacks merit for the reasons discussed in Subsection II.A.

12

3) contrary to Petitioner's bald assertion, the Court did not "'determine' [he wa]s a Career Offender prior to sentencing" (Docket Entry 103, ¶ 12(Ground Three)(a)); instead, it made that determination at Petitioner's sentencing hearing by adopting the relevant factual findings and guideline applications in his PSR (see Docket Entry 79 at 21-23);

4) by properly adopting the PSR's factual findings (other than as to Petitioner's membership in a gang) and guideline applications, the Court, in fact, "accept[ed] on the record that the [PSR's] Criminal History point score [w]as correct" (Docket Entry 103, ¶ 12(Ground Three)(a)); similarly, by adopting the PSR (which documented Petitioner's convictions on both counts of his Indictment (see Docket Entry 103 at 46)), as well as by pronouncing sentence on both counts (see Docket Entry 79 at 24-25; see also id. at 21 ("[Petitioner] is subject to sentencing for Count One, attempted interference with commerce by robbery, and Count Two, brandishing a firearm during and in relation to a crime of violence.")), after having accepted the verdicts of guilt on both counts (see Docket Entry dated Oct. 14, 2011), the Court clearly expressed that Petitioner "was convicted for both charges in Count #1 and Count #2" (Docket Entry 103, ¶ 12(Ground Three)(a)); and

5) Petitioner has failed to offer any support for the contention that he would have received a lesser sentence, "had the Court assigned an independent enitiy [sic] to review the [PSR] in

13

order to quantify the point score assessed" (id.); nor has Petitioner shown any entitlement to review of his PSR by an independent entity (see id.).

Simply put, Ground Three (like Grounds One and Two) provides no basis for collateral relief.

### III.  MOTION TO AMEND

The instant Motion to Amend seeks to add three new ineffective assistance claims based on the decision of Petitioner's counsel:

A) to file an alibi notice (Docket Entry 110 at 1, 2);

B) not to obtain "check stubs to show that [the owner of the victim business] ha[d] written checks in the past" (id. at 1); and

C) "not [to] object[] to the surveillance photos because they were not in [Petitioner's] discovery" (id.).

The Court should deny as futile Petitioner's attempt to pursue these three claims, see generally United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (ruling that "futility of amendment" warrants denial of leave to amend in Section 2255 context), because each fails as a matter of law.

### A.  Alibi Notice

The Indictment in this case (returned on May 31, 2011) charged Petitioner and his co-defendant with an attempted armed robbery of a business on September 21, 2010.  (Docket Entry 1 at 1-2.)  On July 12, 2011, the United States filed a pretrial Demand for Notice of Alibi, pursuant to Federal Rule of Criminal Procedure

14

12.1(a)(1), noting that Petitioner "[wa]s charged with attempting to commit a robbery . . . at approximately 1:00 p.m. on September 21, 2010 in Durham County, North Carolina." (Docket Entry 21 at 1.) As a result, within 14 days, Petitioner had to serve the United States with a written notice "of any intended alibi defense . . . [including] the name, address, and telephone number of each alibi witness on whom [he] intend[ed] to rely," Fed. R. Crim. P. 12.1(a)(2), or he would face "exclu[sion of] the testimony of any undisclosed witness regarding [his] alibi," Fed. R. Crim. P. 12.1(e). Ultimately, on October 4, 2011, Petitioner filed a Notice of Alibi stating that, "[o]n September 21st, 2010, [he] spend [sic] the day in Durham in the company of his ex-girlfriend, Nikki Foster where he had also spent the preceding evening. The two woke up at approximately 2:00 P.M. on September 21st." (Docket Entry 33 at 1; see also Docket Entry 40 at 2 (listing Ms. Foster as a witness United States might call); Docket Entry 44 at 1 (identifying Ms. Foster as a potential witness for Petitioner).)

Petitioner also moved in limine for a judicial determination, outside the jury's presence, regarding the admissibility of any recordings of telephone communications in which Petitioner participated while confined. (Docket Entry 30; see also Docket Entry 37 at 6 (confirming, in Trial Brief, intention of United States to offer recorded telephone calls made by Petitioner's custodians).) Consistent with that request, the Court (per then-

15

Chief Judge Beaty) heard voir dire testimony (including from Ms. Foster), as well as argument (without the jury present), and issued rulings on what portions of what recordings the United States could introduce. (See Docket Entry 46 at 3-43; Docket Entry 70 at 77-80, 84-92, 99-103, 115-31, 137-61.) Among other things, those rulings allowed the United States to present evidence (in its case-in-chief) that Petitioner solicited Ms. Foster to provide a false alibi (for the purpose of showing his consciousness of guilt). (See Docket Entry 70 at 151-54, 159-60.)[9]

Subsequently, before the jury, a federal task force officer testified that he gathered recordings of telephone calls involving Petitioner (including conversations with Ms. Foster) (Docket Entry 71 at 7-8) and Ms. Foster testified about her interactions with Petitioner (including telephone conversations they had, some recordings of which the United States played) (id. at 128-36, 150-84; Docket Entry 83 at 1-4, 11-23). During her testimony, Ms. Foster stated, inter alia, that:

1) she had known Petitioner for ten years, they had dated at times, and they had discussed marriage (including as recently as the preceding week) (Docket Entry 71 at 129-30);

---

[9] The Fourth Circuit expressly affirmed that evidentiary determination. Barbee, 524 F. App'x at 19 ("We also discern no error in the district court's decision to allow the Government to introduce in its case-in-chief testimony about [Petitioner's] alleged attempts to secure an alibi.").

2) in September 2010, she lived in the "Yorktown Apartments" in Durham (id. at 130); and

3) Petitioner came to her apartment on the evening of September 20, 2010, and stayed with her through the night and the "entire" next day (i.e., September 21, 2010), when they woke up "[a]round one or two in the afternoon[,] . . . pretty much hung around the house and spent the night, and then the next day [they] went and got a hotel room . . . on the 22nd" (id. at 151-52).

The recorded conversations between Petitioner and Ms. Foster played for the jury reflected, inter alia, that:

1) in June 2011, Petitioner told Ms. Foster: "[My counsel is] going to be giving you a call, and . . . he's just going to ask you do you remember –- do you remember September 21st? . . . [C]an you recall [Petitioner] with you on September 21st and where you all [were] located on September 21st and -- so all that good shit." (Docket Entry 83 at 2-3);

2) in that June 2011 conversation, Ms. Foster asked, "Where was I on the 21st?" (id. at 3), and Petitioner responded, "Say probably within -- you know, just Yorktown" (id.); and

3) on October 10, 2011, Petitioner advised Ms. Foster that, when she testified at trial, counsel for the United States would "come at [her], and . . . try to say that it was like a coerced alibi" (id. at 20), but she should explain that, during their conversation in June 2011, Petitioner only asked about September

17

21, 2010, "because [he] can't remember where [they] were or if [they] were even together at all" (id. at 21; see also id. at 21-22 ("In the call you just asked me where were you, and I just said probably in Yorktown. But you got to explain that to them people. You got to explain it to them people regardless if you felt that -- that I was trying to tell -- I was trying to -- maybe I was trying to refresh your memory about September 21st because offhand you didn't remember, so you asked me where were you?").

After the jury found Petitioner guilty, the Probation Office prepared a PSR, which documented that, "[d]uring a call on October 11 [sic], 2011, with [Ms.] Foster, [Petitioner] asked Ms. Foster, if she had her notepad and pencils. He then began coaching her on how to respond while being questioned during the trial." (Docket Entry 103 at 47; see also Docket Entry 83 at 18 (setting forth, in transcription from telephone call on October 10, 2011, Petitioner's question to Ms. Foster, "Listen, you got your notepad? You got your pencil?").) The PSR further concluded that Petitioner "obstructed justice by unlawfully influencing a witness, [Ms.] Foster, by reviewing her testimony over the telephone and instructing her on how to testify during trial." (Docket Entry 103 at 47.) As a result, the PSR added two levels under U.S.S.G. § 3C1.1 (to Petitioner's Base Offense Level of 20 under U.S.S.G. § 2B3.1(a)) (id. at 48); however, that two-level addition ultimately did not affect his Total Offense Level, because the

18

career offender enhancement (with its higher, alternative offense level of 32) applied (see id.; see also Docket Entry 79 at 21-23 (adopting PSR's career offender determination)).

According to the instant Motion to Amend, Petitioner's counsel rendered ineffective assistance because:

> [Petitioner] never gave [his counsel] an alibi. He never told [his counsel] to fail [sic] a notice as if [they] were putting forth an alibi. [Petitioner's counsel] never spoke to Nikki Foster or Sharon Battle, but he assigned them to be an alibi witness for [Petitioner]. [Petitioner] was given an additional point for doing what [his] lawyer should've done . . . . Counsel's failure to investigate any witness before trial was unreasonable because counsel had [a] duty to develop reasonable strategy.
>
> . . . .
>
> Ms. Foster was the government's key witness, but only with the help of [Petitioner's] counsel. If [Petitioner's counsel] would've never put an [sic] notice of alibi up, the government could've never questioned Ms. Foster about the alibi she gave them. [Petitioner] never requested an alibi. Nor did [he] advise [his counsel] to put an [sic] notice before the [C]ourt. [In o]ne of the audio calls that was used against [Petitioner, recorded] a few days before trial with [Petitioner] speaking to Ms. Foster, [Petitioner] told her that [he] still d[id]n't know where [he] was at the time of the robbery. [Petitioner's counsel] paved the way for the government to lay out there [sic] case against [Petitioner]. [Petitioner's counsel] has no documents showing that he spoke to [Ms.] Foster nor [Ms.] Battle. [Petitioner's counsel] only gave the government the gas they [sic] needed to paint there [sic] picture before the jury . . . .

(Docket Entry 110 at 1-2.)

For reasons discussed in Footnote 3, the above-quoted, unsworn allegations made without acknowledgment of perjury penalties carry

19

no weight. The Court could deem this claim legally insufficient on that ground alone. Alternatively, even if the Court treated those allegations as sworn for present purposes, Petitioner has failed to state an ineffective assistance claim related to his counsel's filing of the Notice of Alibi for numerous reasons.

First, the record (specifically, the recording of Petitioner's June 2011 conversation with Ms. Foster) conclusively establishes that, shortly after the return of his Indictment, Petitioner wanted his counsel to view Ms. Foster as an alibi witness. (See Docket Entry 83 at 2-3.)[10]  Second, Petitioner has offered only a conclusory assertion (bereft of any showing of a basis in personal knowledge) that his counsel did not speak to Ms. Foster; Petitioner, however, cannot meet his burden of proving he received professionally unreasonable assistance in that fashion. See United States v. Carter, No. 3:07CR230HEH, 2013 WL 394717, at *2 (E.D. Va. Jan. 31, 2013) (unpublished) ("[The petitioner] previously submitted his own affidavit with his § 2255 Motion. Nevertheless, the facts offered by affidavit or sworn declaration . . . 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to

---

[10] The fact that, in October 2011, Petitioner (upon learning the United States might present evidence at trial of his recorded June 2011 conversation with Ms. Foster) attempted to induce her to testify that he actually did not know if he spent the day of the robbery with her does not change the substance of what the June 2011 recording shows, i.e., at that point, Petitioner intended his counsel to consider Ms. Foster an alibi witness.

testify on the matters stated.'" (quoting Fed. R. Civ. P. 56(c)(4))); _Cano_, 2009 WL 3526564, at *3 ("[The p]etitioner has provided only conclusory allegations which meet neither the error nor the prejudice prong of the _Strickland_ analysis."); see also Rule 12, Rules Governing § 2255 Proceedings ("The Federal Rules of Civil Procedure . . ., to the extent that they are not inconsistent with any statutory provisions or these [R]ules, may be applied to a proceeding under these [R]ules."); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (holding that summary judgment principles apply to motions under Section 2255).[11]

Third, the Notice of Alibi filed by Petitioner's counsel does not identify Ms. Battle as an alibi witness. (See Docket Entry 33.) Fourth, Petitioner received an upward adjustment for obstruction of justice not because of any failure of his counsel, but because Petitioner unlawfully influenced Ms. Foster's testimony. (See Docket Entry 103 at 47-48.) Fifth, Petitioner cannot demonstrate any prejudice associated with the obstruction adjustment, because the career offender enhancement determined his offense level under the advisory Guidelines. (See id. at 48.)

---

[11] Nor has Petitioner alleged circumstances that would support an inference that he possessed personal knowledge about what, if any, documentation of contact with Ms. Foster his counsel holds. Moreover, the allegation that Petitioner's counsel lacks documentation of any communication with Ms. Foster, even if accepted as true, would not establish that no such communication occurred. Finally, Petitioner has not explained how any discussion between his counsel and Ms. Foster plausibly could have altered the outcome of the case and thus Petitioner has not shown prejudice.

Sixth, Petitioner's allegation that his counsel "fail[ed] to investigate any witness" (Docket Entry 110 at 1) is "conclusory, speculative, and unsupported and fails for all these reasons," Cabrera, 2014 WL 6386902, at *9. Seventh, to the extent Ms. Foster became a "key witness," helped "lay out [the] case against [Petitioner]," or "gave the government the gas [it] needed to paint [its] picture before the jury" (Docket Entry 110 at 2), Petitioner must blame not his counsel, but his own decision to converse by telephone with Ms. Foster while confined; the United States mined the custodial recordings of Petitioner's (and his co-defendant's) calls (see Docket Entry 70 at 85-90) and found therein probative evidence, including of Petitioner inducing Ms. Foster to provide a false alibi, which evidence the United States then obtained leave to use at trial to prove consciousness of guilt, a course of action that did not depend on the Notice of Alibi filed by his counsel (see id. at 151-54, 159-60).[12]

For all these reasons, the Court should rule Petitioner's proffered, alibi-related ineffective assistance claim futile.

---

[12] In other words, Petitioner's contention that, "[i]f [his counsel] would've never put an [sic] notice of alibi up, the government could've never questioned Ms. Foster about the alibi she gave them" (Docket Entry 110 at 2) misapprehends the criminal investigative and trial process. The United States possessed the right (and the incentive) to interview (and to subpoena to trial) people who had contact with Petitioner around and after the time of the charged attempted robbery (like Ms. Foster) for the purpose of gathering (and presenting) evidence probative of his guilt, regardless of whether or not Petitioner gave notice of an alibi.

## B.  Check Stubs

The second claim proposed in the instant Motion to Amend asserts that Petitioner's counsel acted ineffectively by failing to obtain "check stubs to show that [the owner of the victim business] ha[d] written checks in the past . . . . If [Petitioner's counsel] would've gotten those documents . . ., the government couldn't paint a picture before the jury that [Petitioner] knew large amounts of money was [sic] in [the business] . . . ." (Docket Entry 110 at 1.)  Petitioner cannot show prejudice (as required by Strickland) arising from his counsel's decision to refrain from gathering records of non-cash transactions between Petitioner and the owner because of the relative insignificance of such evidence, as the Court (per then-Chief Judge Beaty) explained when Petitioner raised the same contention at his sentencing hearing:

> [PETITIONER]:  [My counsel] failed to delib -- he deliberately failed to investigate possible leads in my defense for my trial.  I informed [him] about certain evidence that I needed to present for us and he told me that those documents were insufficient.  Mr. -- the Government contended that I knew [the owner of the victim business] had large amounts of money in his place of business and I told [my counsel] that I have bank statements showing that [the owner of the victim business] was writing me checks at times that -- when he don't [sic] have cash in his place of business.  [My counsel told me that it wasn't important.  [My counsel] also --
>
> THE COURT:  [The owner of the victim business] was writing you checks for things you were bringing in for pawning?
>
> [PETITIONER]:  Yes, sir.

THE COURT: And your point is what? That he did have money or did not have money?

[PETITIONER]: No, no. I'm sorry. I'm talking about the Government argued that I knew that [the owner of the victim business] had large amounts of money in his place of business; but there was times he wouldn't have cash, period, and he would write me checks. I informed [my counsel] about this to argue this -- to present it for our defense, but he told me that it wasn't important; that the Government --

THE COURT: How would that have been relevant?

[PETITIONER]: About the documents?

THE COURT: How much money [the owner of the victim business], as part of his establishment, had in his store.

[PETITIONER]: I was just talking about in reference to the argument that the D.A. (sic) made.

THE COURT: Well, that's a minor evidence argument . . . . [E]ven if you had had that [evidence], what difference would it have made?

[PETITIONER]: That's just one point, Your Honor.

(Docket Entry 79 at 10-12 (emphasis added).)

The lack of probative force of the check-stub evidence becomes even clearer upon review of the trial testimony of the owner of the victim business (along with the related documentation admitted at trial showing) that (1) the owner paid Petitioner in cash (from the "cash bag" kept behind the counter) for scrap gold and/or silver on September 3, 8, and 14, 2010 (Docket Entry 69 at 41-44, 47) and (2) the owner engaged in no other transactions with Petitioner between September 14 and 21, 2010 (id. at 45). Put another way, Petitioner could not plausibly have off-set the evidentiary weight of the

24

showing by the United States that he knew (based on multiple encounters shortly before the attempted robbery) that the owner kept cash in a bag behind the counter, by presenting evidence of earlier check payments. At a minimum, Petitioner cannot meet his burden of proving prejudice under Strickland in connection with this claim because the presentation to the jury of such check-related evidence would not have raised a reasonable probability of acquittal. See generally Galloway, 749 F.3d at 241.

Notably, on direct appeal, the Fourth Circuit described the "evidence establishing that [Petitioner] committed the attempted robbery" as of such strength as to render harmless any alleged error in the admission of the false alibi evidence. See Barbee, 524 F. App'x at 19 n.3; see also Appellee's Response Brf., United States v. Barbee, Nos. 12-4197, 12-4260, 2012 WL 7070567, at *43-45 (4th Cir. Feb. 13, 2012) (summarizing (with citations) evidence against Petitioner, including his statements placing himself near the crime scene, his palm print on the glass door near his co-defendant's palm print, and telephone records documenting contact between Petitioner and his co-defendant around the time of the robbery attempt). That conclusion about the potency of the evidence of Petitioner's guilt similarly would preclude relief on the instant ineffective assistance claim attacking his counsel's decision about the check stubs. See Eaton v. Angelone, 139 F.3d 990, 994 (4th Cir. 1998) ("[I]n the face of the [prosecution's]

overwhelming evidence, we can ascribe no prejudice to any alleged errors by [defense] counsel . . . ."); United States v. Hubbard, 22 F.3d 1410, 1422 (7th Cir. 1994) ("The prejudice prong of *Strickland* requires a showing that the incompetence [of defense counsel in failing to present evidence] made the trial fundamentally unfair or made the convictions unreliable. . . . Th[e] overwhelming evidence against [the defendant] prevents him from meeting the high prejudice standard of *Strickland*." (internal quotation marks omitted)); Barry v. United States, No. 14CV5898(RJD), 2015 WL 3795866, at *2 (E.D.N.Y. June 17, 2015) (unpublished) ("On [the petitioner's] direct appeal, the Second Circuit found that there was overwhelming evidence of [his] guilt and thus confidently concluded that any evidentiary error was harmless. . . . [T]hese appellate determinations foreclose [the petitioner's] ability to establish that any of [his] counsel's supposed trial errors caused him prejudice within the meaning of *Strickland*." (internal brackets, citations, and quotation marks omitted)).

The foregoing considerations demonstrate the futility of Petitioner's effort to assert an ineffective assistance claim predicated on his counsel's failure to make use of evidence that the owner of the victim business had written checks to Petitioner in the past.

## C. Surveillance Photographs

Lastly, the instant Motion to Amend would add a claim that Petitioner's counsel provided ineffective assistance by "not objecting to the surveillance photos because they were not in [Petitioner's] discovery . . . ." (Docket Entry 110 at 1.) Petitioner has offered no support for this conclusory assertion and the record refutes any suggestion that his counsel lacked pretrial access to the surveillance photographs introduced at trial.

In that regard, a detective who responded to the scene of the attempted robbery in this case testified that he reviewed surveillance video from a bowling alley near the victim business and observed two individuals (one taller than the other) walking to and from the direction of the victim business around the time of the attempted robbery. (Docket Entry 69 at 110-12.) The detective thereafter identified (and the Court (per then-Chief Judge Beaty) subsequently admitted) three photographs extracted from the surveillance video, each depicting those two individuals. (Id. at 113-15; Docket Entry 70 at 42.) Finally, the detective testified that, based on later interactions with Petitioner and his co-defendant, Petitioner was approximately 5'10" and his co-defendant was approximately 5'6". (Docket Entry 70 at 45.)

Counsel for Petitioner and counsel for his co-defendant both cross-examined the detective about the three admitted surveillance video photographs in a manner indicative of prior familiarity.

27

(See id. at 48-63.)  Further, the record includes a transcribed recording of a telephone conversation in which Petitioner participated while in custody on July 10, 2011 (i.e., more than three months before his trial) wherein he states "I know they got -- uh -- got us on camera in the --" (Docket Entry 83 at 6), before his stepfather interrupts that they "don't want to get too far into it" (id.).  Similarly, in a custodian-recorded telephone call on July 21, 2011, Petitioner remarks:  "They got their surveillance, but their surveillance, it's not even at the actual place.  It's just showing that -- that -- that I'm in the area."  (Id. at 9.) Petitioner's own words thus belie the notion that the United States sprung the video surveillance photographs on him at trial.

Under these circumstances, Petitioner cannot establish either deficient performance or prejudice (as required by Strickland) because he cannot show that his counsel could have objected to the surveillance video photographs based on a lack of pretrial disclosure.[13]  As a result, the Court should reject the instant proposed ineffective assistance claim based on its futility.

### IV.  CONCLUSION

Petitioner's claims all fail as a matter of law.

---

[13] Petitioner also cannot prove prejudice because the exclusion of the surveillance video photographs would not have created a reasonable probability of acquittal, see generally Galloway, 749 F.3d at 241, particularly given the overall strength of the evidence against Petitioner (as recognized by the Fourth Circuit, Barbee, 524 F. App'x at 19 n.3), see, e.g., Eaton, 139 F.3d at 994.

28

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 103) and his letter motion requesting leave to assert additional collateral claims (Docket Entry 110) be denied without a certificate of appealability.

**IT IS ORDERED** that the Clerk shall remove from the publicly-available electronic and physical Docket the portion of Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence that encompasses his Presentence Report (Docket Entry 103 at 43-56).

**IT IS FURTHER ORDERED** that the Clerk shall unseal the Response to Petition pursuant to 28 U.S.C. § 2255 (Docket Entry 107) and the attachments thereto (other than Petitioner's Presentence Report) (Docket Entries 107-1, 107-2, 107-4 - 107-7).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

December 2, 2015

29